### Richmond

FRANCES C. FINK, ET AL.

v.

JAMES D. RITCHIE, ETC., ET AL.

December 4, 1981.

Record No. 790771.

Present: All the Justices.

*Claude M. Lauck (Kenneth S. Bridgeman,* on briefs), for appellants.

*John A. Rupp, Assistant Attorney General; William M. Hackworth, Assistant City Attorney (Wilburn C. Dibling, Jr., City Attorney; Marshall Coleman, Attorney General; James E. Ryan, Jr., Deputy Attorney General,* on briefs), for appellees.

THOMPSON, J., delivered the opinion of the Court.

In this appeal the dispositive question is whether Code § 63.1-133.1 forbids the Commonwealth and one of its political subdivisions from recouping general relief payments from supplemental security income payments.[1]

Frances Fink and Martha Dooley filed motions for judgment on January 26, 1977, and March 23, 1977, respectively, against James D. Ritchie, Board of Public Welfare and Director of the Department of Human Services for the City of Roanoke, William L. Lukhard, Commissioner of Public Welfare, and Charles B. Walker, Comptroller of the Commonwealth, seeking reimbursement for withheld supplemental security income payments. Fink and Dooley alleged that Code § 63.1-133.1 invalidated their written authorizations for reimbursements.[2] After consolidating the

---

[1] Error was assigned to the action of the trial court in ruling that James D. Ritchie, Board of Public Welfare and Director of the Department of Human Services for the City of Roanoke, was not a proper party to the proceedings, but in view of our holding it is unnecessary to reach that issue.

[2] Code § 63.1-133.1. *No lien to attach to property of applicant or recipient; release of existing unforeclosed liens.*—No lien or other interest in favor of the State or any of its political subdivisions shall be claimed against, levied or attached to the real or personal property of any applicant for or recipient of public welfare assistance and services as a condition of eligibility therefor or to recover such aid following the death of such applicant or recipient. All such liens perfected and unforeclosed on April six, nineteen hundred seventy, shall be void ab initio and all liens foreclosed prior to April six, nineteen hundred seventy, are hereby validated for all purposes in law and equity. *Provided, however, that*

cases and hearing the evidence, the lower court denied recovery to Fink and Dooley, holding that the written authorizations were invalid and contrary to Code § 63.1-133.1, but because both had accepted the benefits of the Supplemental Security Income Program (SSI), they could not avoid the burdens (recoupment provisions) of the system. Fink and Dooley appealed, and the defendants assigned cross-error. We disagree with the lower court's rationale, but affirm its action denying Fink and Dooley relief.

The SSI Program, Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (1976), provides assistance to the aged, blind and disabled. The delay between application for and final approval of SSI benefits can exceed six months. SSI applicants by definition cannot support themselves during the interim. Section 1383(g) permits the Secretary of the Department of Health and Human Services (formerly Health, Education and Welfare) (hereinafter Secretary) to negotiate with state welfare departments to provide interim assistance from state or local funds to meet the applicant's basic subsistence needs until the first SSI payment arrives. The first SSI check is a lump-sum payment covering the period from application. To prevent an applicant from receiving both state and federal funds for this interim period, the Secretary, upon the applicant's written authorization, may send the first SSI check to the state or local welfare department. The state deducts the amounts that it has paid as interim assistance and sends the balance, if any, to the applicant.

The legislative history of § 1383(g)(1) indicates Congress' intent to provide recoupment of interim state funds and thus encourage the states to provide assistance when they have no duty to do so.[3] Pursuant to the federal statute, the Secretary and the

---

*this section shall not be construed to bar any action by the State or a local board which seeks reimbursement for part or all of the costs incurred by the State or local board for care and maintenance provided to an applicant of the Federal Supplemental Income program during the application period where such applicant becomes eligible for said program retroactive to the date of application.* [Emphasis denotes language added by Acts 1977, c. 83.]

[3] H.R. Rep. No. 94, 94th Cong., 2d Sess. 3, *reprinted in* [1976] U.S. Code Cong. & Ad. News 1726, 1727, 1729-30, states in pertinent part:

Section 1 of H.R. 14484 amends title XVI to permanently extend the Interim Assistance Reimbursement Program which was enacted in 1974 for the purpose of providing Federal reimbursement to states for interim assistance payments made to individuals awaiting final determination on their applications for benefits from the supplemental security income program for the aged, blind and disabled. The IAR

Commissioner of Public Welfare for Virginia entered into an agreement dated March 7, 1975, implementing the recoupment provisions of § 1383(g). The Commissioner promulgated "Policy Issuance #17"[4] which contained this provision:

> When a client applies for assistance until receipt of SSI benefits, a GR application, PA-4, is to be completed. The worker must verify either verbally or in writing with the Social Security Administration District Office the date on which an SSI application was filed. This information must be recorded in the case record . . . . The worker must explain "Authorization for Release of SSI Check," Form DW-FS-38, to the applicant and have him sign this authorization for the local department to receive the first SSI check . . . . *If applicant refuses to sign the authorization, assistance is to be denied.* [Emphasis added.]

program was established to alleviate hardships on potential SSI recipients resulting from delay in determination of SSI eligibility. Federal reimbursement is made only for applicants who are subsequently determined eligible for SSI payments. There is no cost to the Federal government because SSI payments are retroactive to the date of application once eligibility is determined.

Participation in the IAR program is an option which the states may exercise through agreement with the Department of Health, Education and Welfare—an agreement which permits reimbursement to the state or directly to a state or local agency within the state.

. . . .

. . . The interim payments to SSI applicants are made by States basically to mitigate the impact of the waiting period for certification. The Federal government only reimburses the States for payments which were made to applicants who were eligible during the period for which they received interim payments. In the absence of this reimbursement provision, no State would have the incentive to make interim payments.

[4] "Policy Issuance #17" states in pertinent part:

GENERAL RELIEF PENDING SSI DETERMINATION

*Interim Assistance Payment Program*

I. Introduction

P.L. 93-368, passed by Congress on August 7, 1974, provides for an "Interim Assistance Payment" Program under which the General Relief given SSI applicants pending final determination of their eligibility may be recovered by the state and locality. The recovery is made by implementing a system in which the client's first (retroactive) SSI check is sent directly from the Social Security Administration to the locality making the GR payments. The locality recoups the amount of such GR payments from this SSI check and pays the client the balance which might remain.

Both Fink and Dooley filed SSI applications before this 1975 agreement was executed or Policy # 17 promulgated. In 1975, before any eligibility determination, they both signed authorizations directing the Secretary to send their first SSI check to the local Director of Human Services. The Secretary found them eligible and mailed their first SSI checks to the Roanoke City Department of Human Services. The Department deducted the interim assistance payments made to each and remitted the balances. Fink and Dooley sought reimbursement for the amounts deducted. When the State Commissioner and the State Comptroller refused refunds, Fink and Dooley filed suit.

They argued, and the lower court held, that the 1977 amendment to Code § 63.1-133.1 does not apply. The court relied on Code § 1-16 which provides the rule of construction that new statutes are prospective and not restrospective. It states that "[n]o new law shall be construed to repeal a former law . . . as to any act done . . . or any right accrued, or claim arising under the former law."

■ The trial court improperly construes Code § 63.1-133.1. The statute addresses merely the acquisition of an interest in or lien on the applicant's real or personal property as a qualifying condition for public assistance. In the early days of Virginia's welfare and public assistance programs, applicants could not meet eligibility requirements if they owned real estate. Former Code § 63.1-128 (1968 Repl. Vol. 9)[5] required the local board to file a notice of assistance in the clerk's office of the county or city in which the real property was located. The clerk docketed this notice in the current judgment lien docket. Upon the recipient's

---

[5] Code § 63.1-128. *Lien on property of recipient; recovery from estate of recipient.*—For each recipient . . . who owns real estate, the local board shall, unless it requires the recipient to execute a deed of trust under the provisions of § 63.1-129, prepare and acknowledge as deeds are acknowledged a notice showing the name of such recipient, the type of assistance and the date of the first payment, and shall file the same in the office of the clerk of the court in which deeds are admitted to record in the county or city in which the real estate is located. The clerk of the court shall docket this notice as a judgment is docketed in the current judgment lien docket, indexing it in the name of the recipient, and in the name of the local board . . . . The filing of a notice under the provisions of this section shall create a lien against all real property of the recipient lying within the county or city wherein the notice is filed in favor of the local board. Upon the death of any such recipient, the local board having reason to believe that the recipient died possessed of property, either real or personal, from which reimbursement may be had, shall file notice with the clerk of the court as hereinabove provided. *The filing of such notice shall create a lien against the estate, both real and personal, of such recipient* . . . . [Emphasis added.]

death, the local board could satisfy the debt from the estate's assets because the filing of the notice created a lien on the estate's real and personal property. Former Code § 63.1-129 (1968 Repl. Vol. 9)[6] permitted the local board to execute and record a deed of trust on the recipient's real estate to secure the assistance repayments.

In 1970, the General Assembly repealed Code §§ 63.1-128 to -130, -132 and -133, and enacted Code § 63.1-133.1. Acts 1970, c. 753. This action represented a definite change of policy for the state government, and Code § 63.1-133.1, though validating past transactions, was a definite expression of that policy. In 1970, the Interim Assistance Program was not in existence. The new statute forbids the welfare department to acquire liens and "other interest," such as the deed of trust, in an applicant's real and personal property, but does not prevent the Commonwealth from recouping funds paid out under the 1975 agreement with the Secretary.

■ As we have said, the trial court misinterprets the 1977 amendment to Code § 63.1-133.1. The applicants filed their suit in January and March of 1977. The amendment to Code § 63.1-133.1 was introduced in the Senate on January 18, 1977; was signed by the Governor on March 4, 1977; and became effective July 1, 1977. According to exhibits in this appeal, Fink and Dooley filed their claim with the Commissioner of Public Welfare on September 16, 1976, alleging that the written authorizations were invalid under Code § 63.1-133.1; on September 28, the Commissioner recommended to the Comptroller that the claims be disallowed; and on November 3, the Comptroller concurred in the recommendations of the Commissioner. The 1977 amendment states:

> [T]his section shall not be construed to bar any action by the State or a local board which seeks reimbursement for part or all of the costs incurred by the State or local board

---

[6] Code § 63.1-129. *Execution of deeds of trust by recipients; redemption and foreclosure.*—Each local board may require any such recipient of assistance as is mentioned in § 63.1-128 to execute a deed of trust on his real estate to secure the local board for all payments of assistance thereafter made to such recipient. The local board shall cause such deed of trust to be recorded. . . . Whenever the amount secured by the deed of trust . . . has been paid, the owner of the property shall be entitled to a deed of release . . . .

Upon the death of any recipient, unless the amount secured thereby shall be paid within twelve months from such date, the local board shall direct the trustee to sell the property . . . . The lien created by such deed of trust shall be prior to all other claims . . . .

for care and maintenance provided to an applicant of the Federal Supplemental Security Income program during the application period where such applicant becomes eligible for said program retroactive to the date of application. [Emphasis added.]

Acts 1977, c. 83. This clause addresses the statute's construction, not its substance, and reveals the General Assembly's intent to use a properly worded amendment to settle the controversy. The chronology of events suggests that the 1977 amendment comes within the letter and spirit of our holding in *Boyd* v. *Commonwealth,* 216 Va. 16, 215 S.E.2d 915 (1975). There we said: "When amendments are enacted soon after controversies arise 'as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.'" 216 Va. at 20-21, 215 S.E.2d at 918, quoting from 1A *Sutherland Statutory Construction* § 22.31 at 184 (4th ed. C. Sands 1972).

We therefore hold that Code § 63.1-133.1 does not invalidate the written authorizations of Fink and Dooley and that neither is entitled to reimbursement. The decision of the lower court will be

*Affirmed.*